259 So.2d 739 (1972)
Bennie JACKSON and Henry Fisher, Appellants,
v.
STATE of Florida, Appellee.
No. 71-362.
District Court of Appeal of Florida, Second District.
March 15, 1972.
Rehearing Denied April 20, 1972.
*740 W. Daniel Kearney, Asst. Public Defender, Bradenton, for appellants.
Robert L. Shevin, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
PIERCE, Chief Judge.
In this case appellants Bennie Jackson and Henry Fisher appeal to this Court from a judgment of conviction entered against them by the Hillsborough County Criminal Court of Record.
On February 18, 1971, information was filed against appellants Jackson and Fisher, together with two others, charging felonies in two separate counts. The first count charged them with breaking and entering "a certain building, to-wit: a phone booth, located at 2219 East Columbus Drive" in Tampa, "a further description ... of which is to the County Solicitor unknown, the property of General Telephone Company of Florida ... "with intent to commit a felony therein, to-wit: to unlawfully ... steal ... money and property of the value of more than One Hundred Dollars", belonging to the telephone company. The second count charged grand larceny in connection with the same transaction in the stealing of the "money and telephone equipment", the property of the telephone company, of more than One Hundred Dollars in value.
A jury trial resulted in a verdict of guilt of both Jackson and Fisher on both counts, and in due course the were adjudged guilty and sentenced to imprisonment in the State Prison of ten years each on the first count charging breaking and entering, and imprisonment of five years each on the second count charging grand larceny, to run consecutively.
Upon an adjudication of indigency they were represented both at the trial and on appeal to this Court by the local Public Defender's office. Oral argument was not requested and the cause was submitted upon the transcript of record and the briefs. But in the discharge of our duty, we have carefully scrutinized the record and briefs filed here.
As to the second count charging grand larceny, we have no difficulty in affirming the judgment and sentence. The guilty *741 verdict on that count is amply sustained by the evidence and there were no fundamental or procedural errors sufficient to taint the verdict as to such count.
But as to the first count charging burglary of a "building, to-wit: a phone booth", we are faced with a more serious situation.
After analyzing the two-volume record and respective briefs filed here and indulging in a modicum of independent research of our own, we are impelled to reverse the judgment of conviction as to this first count for two reasons, namely, (1) the record did not establish that the "phone booth" was a "building" within the meaning of the applicable statute, and (2) an indispensable element in the charge of breaking and entering, namely, the non-consent of the owner, was not established. We therefore must reverse as to the first count, but will discuss the two grounds of reversal seriatim:

(1) The phone booth as a building.

F.S. § 810.01 F.S.A. provides that 
"Whoever breaks and enters a dwelling house ... with intent to commit a felony, ... shall be punished by imprisonment in the state prison for life, or for such term of years as may be determined by the court... . be not armed ... by imprisonment in the state prison not exceeding twenty years". (Emphasis supplied).
F.S. § 810.02 F.S.A. provides that 
"Whoever breaks and enters any other building . .. with intent to commit a felony ... shall be punished by imprisonment in the state prison not exceeding fifteen years". (Emphasis supplied).
Count 1 charged that Jackson and Fisher 
"did unlawfully break and enter a certain building, to-wit: a phone booth, located at 2219 East Columbus Drive, in the City of Tampa, ... a further description and more exact location of which is to the County Solicitor unknown ... with intent to commit a felony therein, to-wit: to unlawfully ... steal ... money ... and property ... of the value of more than One Hundred Dollars ...". (Emphasis supplied).
It will be observed that the definitions of the two offenses set forth in F.S. § 810.01 and § 810.02 F.S.A. are identical except that § 810.01 has to do with a "dwelling house" while § 810.02 has to do with "any other building".
In a burglary prosecution the nature and character of the building allegedly burglarized is a material element of the offense and must be both alleged and proven with particularity. See Wood v. State, 1882, 18 Fla. 967; Kirkland v. State, 1940, 142 Fla. 73, 194 So. 624; Johnson v. State, Fla.App. 1966, 190 So.2d 601, affirmed 193 So.2d 56; Johnson v. State, Fla.App. 1966, 188 So.2d 61. The offense of breaking and entering involves an invasion of the possessory rights, as distinguished from ownership rights, of another. Cannon v. State, 1931, 102 Fla. 928, 136 So. 695; Smith v. State, 1928, 96 Fla. 30, 117 So. 377; Presley v. State, 1911, 61 Fla. 46, 54 So. 367.
Three cases have been decided in Florida involving the burglary of a phone booth, the 3rd District Court case of Dawalt v. State, Fla.App. 1963, 156 So.2d 769; the 1st District case of Perry v. State, Fla.App. 1965, 174 So.2d 55; and the 4th District case of Catanese v. State, Fla.App. 1971, 251 So.2d 572.
In Dawalt, the information charged the burglary of "a certain structure or building, to-wit: a telephone booth ... within a building" at a described location in Dade County, with intent to commit a *742 misdemeanor. The 3rd District Court said that:
"The determinative question is whether a telephone booth may properly be classed as a building when it is located in a building.
A telephone booth may or may not be a building, depending upon its location and other facts. A different test might be applied to a telephone booth which is outside or apart from a building and one which is within a building. Also, telephone booths differ materially in their structure. Some are enclosed, having four sides, a floor and a roof or ceiling. Others are open fronted and without covering."
The Court in Dawalt observed that "the state presented evidence that the telephone booth in question was inside a restaurant. The defendant was not charged in the information with entering the restaurant building, but with entering a building consisting of the telephone booth, inside the restaurant building." The Court held that the offense was not made out because the telephone booth was not a "building" notwithstanding the information described it as a "building, to-wit: a telephone booth containing a telephone", observing that "that which is not a building within the meaning and intendment of [the burglary statutes] ... would not be made so by an allegation in an information designating it as a building."
In Perry, the 1st District Court stated that "the principal question for our determination in this appeal is whether a telephone booth located outdoors is a building within the meaning of" the burglary statutes. In that case the information charged that the accused "entered without breaking `a certain building, to-wit: a telephone booth' ..., with intent to commit a misdemeanor, to-wit: petit larceny". There three telephone booths were involved, each the subject of a separate count, and the opinion recited that "it is clear from the evidence adduced at the trial that each of these booths was located outdoors, not within another building". The 1st District Court held that the "outside telephone booths" there involved constituted "buildings" under the burglary statutes, whereupon the conviction in Perry was affirmed.
In Catanese, the 4th District Court reversed a conviction entered upon a plea of guilty under an information which charged that the accused "did then and there break and enter a telephone booth", holding that there was "a failure to allege any facts from which it can be determined that such telephone booth was in fact a building within the rationale of the Perry case, supra, rather than a nonbuilding within the holding of the Dawalt case, supra."
In the instant case we are impelled to reverse the judgment of conviction. We agree with the 3rd District Court in reversing Dawalt although by way of dicta we see no distinction between an "indoor" phone booth and an "outdoor" phone booth insofar as burglary is concerned. And we disagree with the 1st District Court in Perry which affirmed the conviction because the phone booth there involved was an "outdoor" phone booth rather than an "indoor" phone booth. As to Catanese we agree with the 4th District Court that failure of the State to allege or prove any facts as to whether the phone booth was inside or outside another building was fatal to a conviction under the burglary statutes.
The State in the instant case alleged under oath that it was without knowledge as to any "further description" or "more exact location" of the phone booth than that it was located at 2219 E. Columbus Drive in Tampa. It may be that the drafter of the information considered it to be pro forma pleading, but in view of the previous cases, supra, it was of necessity a vital element of distinction.
And aside from the language of the information itself, there is no testimony to show whether the "phone booth" was inside or outside another building, or whether *743 it was outside in the open by itself, or whether it was adjacent to or connected with any other building or structure, or whether it was an open-frontage or enclosed structure, or had any other structural characteristics as would disclose, or throw any light upon, the nature or attributes of its housing or edifice.
So, in the absence of any showing in the record, either in the accusatorial pleading or in the proofs at trial of how the phone booth was "housed", we must assume for disposition here that the phone booth was an "inside" phone booth, and therefore, applying the rationale of Dawalt and Catanese, there was no burglary of a "building" involved such as would activate the State burglary statutes aforesaid.
Although not necessary to decision here, and at the risk of having "obiter fever" but only because the same situation could again recur, we might mention that, in our considered opinion, the breaking open of a phone booth is not the breaking and entering of a "building" under our burglary statutes, whether it is "within or without another building".
After all, a phone booth is merely an enclosure for a telephone, and is not a building in the normal sense. It has no function as a building, except to enclose that particular phone. It has no purpose other than to provide a place to make or receive telephone calls. A phone booth in this light is not a "building" within F.S. § 810.02 F.S.A.
This view is strengthened by a close examination of our two main burglary statutes. F.S. § 810.01 F.S.A. prescribes the penalty for burglary of a "dwelling house", while F.S. § 810.02 F.S.A. provides the penalty for burglary of "any other building"; otherwise, as before observed, the two statutes are identical in language.[1] It seems logical to conclude from an analysis of these two Sections and their historical background that they were intended to apply to and embrace the same general type and character of structural building, as to permanency, stability, fixedness, etc., with the sole difference that § 810.01 covers a building that is a "dwelling house" while § 810.02 covers "any other building". This conclusion is supported by the fact that separate statutes are aimed at the burglary of other specific enclosures, such as a ship, vessel, railroad car, automobile, truck, trailer, semi-trailer, house car, or aircraft. §§ 810.02; 810.03; 810.04; 810.05; 810.051 F.S.
As hereinbefore adverted, we are hinging our reversal as to the first count of burglary upon the narrow rationale of Dawalt and Catanese aforesaid, namely, that the record here does not show whether the phone booth involved was inside or outside another building, and giving effect to such uncertainty it must be presumed to have been inside, and therefore no offense of burglarizing a "building" was shown. But although we have grave doubt as to validity of a conviction based upon a charge of breaking and entering "a phone booth", irrespective of whether such phone *744 booth is inside or outside another building, we believe that an appellate Court should go no further, particularly in reversing a criminal case, than is minimally necessary in the particular case. The "hand of restraint" is still the guiding axiom in appellate determination.

(2) Non-consent of the Owner.

The information alleges and the proof establishes that the phone booth in question was owned by "General Telephone Company of Florida". While it does not appear, and strangely so, that any witness was asked as to the exact or general type of phone booth involved, it may be assumed for disposition of the present point, that it was any one of the several types of public phone booths with which everyone is familiar. Some are open, some are closed; some have retractable doors and openings, some have none; some are on stilts, some are attached to other kinds of backstops.
But they all have one common denominator: "they are readily accessible to the interior without necessity of resorting to any "breaking" to enter. The question thereupon arises  is it a criminal burglary of the phone booth for a person to enter with criminal intent to steal any of the contents? We think not, because one of the indispensable ingredients of the offense of breaking and entering is lacking, namely, the non-consent of the owner, which in this case was the local telephone company.
At this point we must emphasize again that we are not here referring to the larceny of the money or personalty involved. That is the subject matter of the second count, which we are affirming. Certainly it is larceny to steal the money and paraphernalia of the phone company, but is it burglary for a person to go into such a phone facility, regardless of his mode of entry and regardless of his intent? The question seems to indicate a clear negative response. There is implied permission for the public to enter a phone booth. The phone company not only consents, but actually invites, the public to enter a phone booth.
The fact of consent, either express or implied, is recognized as a good defense in breaking and entering cases. See generally 12 C.J.S. Burglary § 12, p. 675, et seq.; 93 A.L.R.2d 534, et seq. Our Supreme Court has so recognized the defense in Damico v. State, 1944, 153 Fla. 850, 16 So.2d 43, although in that case it was held that the facts were insufficient to constitute a defense. There appears to be no other Florida case on the point.
However, decisions from other jurisdictions recognize the defense in proper cases. See State v. Newbegin, 25 Me. 500; State v. Stephens, 150 La. 944, 91 So. 349, 23 A.L.R. 286; People v. Descheneau, 51 Cal. App. 437, 197 P. 126; Shaffer v. State, 137 Tex.Cr.R. 476, 132 S.W.2d 263; People v. Schneller, 69 Ill. App.2d 50, 216 N.E.2d 510.
Upon authority of the foregoing, the judgment appealed is
Reversed as to the first count, and
Affirmed as to the second count, of the information.
HOBSON, J., concurs.
McNULTY, J., concurs specially.
McNULTY, Judge (concurring specially).
I fully concur both in affirming the larceny conviction and in reversing the breaking and entering conviction. I would base the reversal of the latter, however, simply on the absence of unlawful entry of the phone booth to begin with. As noted by my brother Pierce, the public is "invited" to enter a phone booth, and it makes no difference whether such booth is a "building" or not, or whether it's inside or outside another structure. In my view, the first essential of breaking and entering or *745 entering without breaking any structure, under our burglary statutes, is the trespass, i.e., the incursion without permission. The trespass becomes burglary, of course, if additionally it is committed with a concurrent mens rea, but the initial entry must be unlawful of itself. Lawful entry, although with sinister design, does not become unlawful retroactively merely because a planned offense is thereafter committed. A shoplifter, for example, is a thief not a burglar. See, 12 C.J.S. Burglary § 11, et seq. See, also, Smith v. State (Alaska 1961), 362 P.2d 1071 and 93 A.L.R.2d 531, 541.
NOTES
[1] These two sections of our present compiled Florida Statutes [§§ 810.01 and 810.02] are identical in language, in defining the offenses involved, as Sections 3281 and 3282 of the Compiled General Statutes of 1906. The old Section 3281, now § 810.01, describes the property as "a dwelling house, or any building or structure within the curtilage of a dwelling house though not forming a part thereof, with intent to commit a felony, or after having entered with such intent to break such dwelling house or other building or structure aforesaid, if he be armed with a dangerous weapon, or have with him any nitro-glycerine, dynamite, gunpowder or other high explosive at the time of breaking and entering, or if he arm himself with a dangerous weapon, or take into his possession any such high explosive within such building, or if he make an assault upon any person lawfully therein ...". The old Section 3282, now § 810.02, in describing the property involved, uses the language: "any other building or any ship or vessel with intent to commit a felony, or after having entered with such intent breaks such other building, ship, or vessel, ...".